Filed 1/29/21  P. v. Gonzalez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GONZALO SANTOS GONZALEZ,<br><br>    Defendant and Appellant. | G058691<br><br>(Super. Ct. No. 16NF2393)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Julian W. Bailey, Judge.  Reversed in part, affirmed in part, and remanded.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Eric A. Swenson and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

Gonzalo Santos Gonzalez appeals from a judgment after a jury convicted him of sexually abusing two female family members. Gonzalez argues there was insufficient evidence of corpus delicti on one of the counts and the trial court erred in instructing the jury on unanimity. We agree with the former but not the latter. We reverse in part, affirm in part, and remand.

FACTS

*I. Substantive Facts*

Gonzalez lived with his wife M.G. (Wife) and her daughter G.G. in a one-bedroom apartment. Wife had two other adult daughters Y.C. and K.C., who was two years younger than Y.C. K.C. had a daughter, N.C. Y.C. and K.C. were Gonzalez's stepchildren, and N.C. was his stepgrandchild. Wife took care of N.C. K.C. dropped off N.C. in the morning, and Wife would take her to school. After school, Wife would pick up N.C. and bring her to the apartment.

On August 25, 2016, Wife and Gonzalez picked up N.C. from school, went to eat, and returned home. Wife waited outside while Gonzalez went inside. Wife asked N.C. to get her a glass of water. G.G. was asleep in the living room. When a few minutes passed and N.C. did not return, Wife went inside to find her.

Wife opened the bedroom door and saw N.C. face up on the bed, looking at a cell phone. Gonzalez quickly got up from the bed. Wife asked him what he was doing. Gonzalez was pale. Wife became hysterical and yelled at him, which woke up G.G. Wife asked N.C. what Gonzalez was doing to her. N.C. said he touched her vagina. Wife and G.G. took N.C. to the living room and asked her what Gonzalez did to her. N.C. said he "would" touch her vagina. G.G. texted K.C. and told her to come to the apartment.

When K.C. arrived, N.C. told her mother that Gonzalez "was touching her pepa and her ass." K.C. confronted Gonzalez, who was nervous and pale, and told him

2

that he did the same thing to N.C. that he did to her and Y.C. when they were young. G.G. called 911. The police arrived and arrested Gonzalez.

The next day, two detectives interviewed Gonzalez after they advised him of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436.[1] Gonzalez told the detectives that on August 25, 2016, he reached into N.C.'s pants and underwear, fondled her buttocks, and inserted his pinky finger into her anus for about five seconds. He denied touching her vagina, but said if he did, it was an accident. When asked if he had previously molested N.C., Gonzalez told the detectives that about two months earlier, he was in his bedroom with N.C. Gonzalez said he lowered his pants and underwear, N.C. pulled down her pants and underwear, and he rubbed her genitals with his hand. He placed his thumb slightly inside her vaginal opening. Gonzalez said he ejaculated while rubbing N.C.'s genitals without masturbating.

When asked whether he had molested Y.C. and K.C., Gonzalez told the detectives that about 20 years earlier he had rubbed their vaginas, breasts, and buttocks with his hand on three occasions over the course of a 12-month period. Gonzalez believed K.C. was about eight years old and Y.C. was about 10 years old. Gonzalez said he ejaculated after rubbing their genitals. He denied orally copulating them.

A social worker interviewed N.C. the same day.[2] N.C. told the social worker that on the day police officers arrested Gonzalez, he had put his hand inside her clothes and underwear and touched her vagina and buttocks area. N.C. told Gonzalez to stop but he continued. She did not allege Gonzalez touched her inappropriately any time before that date. In fact, she categorically denied he touched her before that date. When the social worker told her that Gonzalez admitted to police he had touched her and

---

[1] The prosecution played a recording of the interview for the jury.

[2] The prosecution played a recording of the interview for the jury.

3

questioned her about other instances, N.C. repeatedly called Gonzalez a "liar" and insisted it was just that day. The only contact N.C. described was a "kiss," but there was no suggestion it was sexual in nature.

## II. Procedural Facts

An information amended by interlineation charged Gonzalez with the following: on August 25, 2016, oral copulation or sexual penetration with a child 10 years old or younger (Pen. Code, § 288.7, subd. (b), all further statutory references are to the Penal Code, unless otherwise indicated) (count 1), and lewd act upon a child under 14 years old (§ 288, subd. (a)) (count 2); between January 1, 2016, and August 24, 2016, oral copulation or sexual penetration with a child 10 years old or younger (§ 288.7, subd. (b)) (count 3); and 20 years earlier regarding K.C., lewd act upon a child under 14 years old (§ 288, subd. (a)) (count 4), and lewd act upon a child under 14 years old (§ 288, subd. (a)) (count 5). The information alleged Gonzalez committed counts 2, 4, and 5 against more than one victim. (§ 667.61, subds. (b), (e)(4).) The information also alleged counts 4 and 5 were charged within the applicable statute of limitations. (§ 801.1, subd. (a).) Finally, as to count 4, the information alleged there was substantial sexual conduct. (§ 1203.066, subd. (a)(8).)

At trial, nine-year-old N.C. testified that on the day police officers came to her house, Gonzalez touched her body with his hand. She did not testify Gonzalez touched her inappropriately any time before that date.

G.G. testified concerning Wife confronting Gonzalez and asking N.C. what Gonzalez did to her. G.G. testified N.C. said, "he would touch her." G.G. added, "[N.C.] said, like, that he would touch her, because she was using, like, past tense. So that's when I noticed this wasn't the first time."

K.C. testified she and Y.C. came to the United States and lived with Gonzalez and Wife. When K.C. was eight years old, Gonzalez touched her and performed oral sex on her on his bed. She said he wore tiger underwear. She could not

4

remember how many times he performed oral sex on her. Years later, Gonzalez asked K.C. to forgive him.

Y.C.'s testimony was admitted pursuant to Evidence Code section 1108. Y.C. testified that when she was a child, Gonzalez, who was in his underwear, came to the bed she shared with K.C. Gonzalez touched their vaginas and performed oral sex on both of them. When Wife entered the room screaming, Gonzalez claimed he was covering them. Other times, he would put her hand inside his pocket and touch his penis. She did not tell anyone because she was embarrassed.

Dr. Jody Ward, a forensic psychologist, testified concerning the five components of child sexual abuse accommodation syndrome, including delayed disclosure. Ward stated two-thirds of victims wait until adulthood to report they were sexually abused as children.

After an unreported discussion regarding the jury instructions, the trial court instructed the jury on the elements of the crimes (CALCRIM Nos. 1128, 1110), reasonable doubt (CALCRIM No. 220), corpus delicti (CALCRIM No. 359), evidence of *uncharged* sex offense (CALCRIM No. 1191A), evidence of *charged* sex offense (CALCRIM No. 1191B), unanimity (CALCRIM No. 3500), and multiple counts (CALCRIM No. 3515).

The jury convicted Gonzalez of all counts and found true all the allegations. The trial court sentenced Gonzalez to four consecutive terms of 15 years to life on counts 1, 3, 4, and 5 for a total prison term of 60 years to life. The court imposed a concurrent term of 15 years to life on count 2.

## DISCUSSION

### I. Corpus Delicti Rule—Count 3

Gonzalez argues there was insufficient evidence of corpus delicti. We agree.

5

"In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant. [Citations.]" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169 (*Alvarez*).) An objection is unnecessary. (*Id.* at p. 1180.) The corpus delicti rule requires a showing as to only two elements: the fact of the harm, and the existence of a criminal agency as the cause of that harm. (*People v. Jones* (1998) 17 Cal.4th 279, 301.)

"The independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible. [Citations.] There is no requirement of independent evidence 'of every physical act constituting an element of an offense,' so long as there is some slight or prima facie showing of injury, loss, or harm by a criminal agency. [Citation.] In every case, once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues. [Citations.]" (*Alvarez, supra,* 27 Cal.4th at p. 1171.)

Here, Gonzalez does not dispute sufficient evidence supports each element of count 3 if a corpus was established. He argues, however, that without considering his confession, there was no slight, independent evidence he sexually abused N.C. before August 25, 2016, to support count 3. The Attorney General cites to the following evidence that establishes the corpus delicti rule: N.C.'s interview with the social worker; G.G.'s testimony concerning N.C.'s allegation; and evidence the trial court admitted pursuant to Evidence Code section 1108. We will address each in turn.

The Attorney General cites to the portion of N.C.'s interview found at 3:17:35 to 3:20:13, which corresponds to pages 47 to 49 of the interview transcript. This

portion of the interview occurred immediately after the social worker took a break and returned to the room. When she returned to the room, the social worker asked N.C. if Gonzalez did anything to her on other days. N.C. said, "I'm nervous" and "I don't have idea [*sic*]." The social worker used dolls to have N.C. show her how Gonzalez touched her. After N.C. said he "pulled [her] shirt down," N.C. used the dolls to illustrate how Gonzalez touched her vagina area and her buttocks area on top of her clothes. The Attorney General then cites to the portion of N.C.'s interview found at 3:20:14 to 3:21:57, which corresponds to pages 49 to 50 of the interview transcript. During this portion of the interview, the social worker told N.C. that she previously said that on the day Wife caught Gonzalez, she said he put his hands inside her clothes and touched her skin.

We watched the recording and read the interview transcript. We disagree with the Attorney General this demonstrates two separate incidents. Although not entirely clear, we conclude the social worker was seeking clarification on whether Gonzalez touched N.C. on top of her clothes or made skin-to-skin contact. The Attorney General cites to no other portion of the interview, and we found none, where N.C. alleged Gonzalez touched her inappropriately any time before August 25, 2016. In fact, she categorically denied he touched her before that date. After N.C. used the dolls to illustrate how Gonzalez touched her, the social worker told her that Gonzalez admitted to police he had. N.C. repeatedly called Gonzalez a "liar" and insisted it was just "one day."

The Attorney General also cites to G.G.'s testimony that when she asked N.C. what Gonzalez did to her, she said, "he *would* touch her." (Italics added.) G.G. testified N.C.'s use of the past tense "would" indicated Gonzalez had touched her before that day. We decline the Attorney General's invitation to conclude that minutes after her grandfather molested her, six-year-old N.C. conjugated the verb "will" and chose its past

7

tense "would" to signify Gonzalez had previously molested her. It would be unreasonable to interpret a six-year-old's comments as if she were an articulate adult.

Finally, the Attorney General cites to the Evidence Code section 1108 evidence. We briefly discuss character evidence, i.e., propensity evidence.

"Character evidence, sometimes described as evidence of a propensity or disposition to engage in a type of conduct, is generally inadmissible to prove a person's conduct on a specified occasion. ([Evid. Code,] § 1101, subd. (a) . . . .) This ban against admitting character evidence to prove conduct, however, does not prohibit admission of specific acts of misconduct to establish a material fact like intent, common design or plan, or identity ([Evid. Code,] § 1101, subd. (b)) . . . . [Citations.]" (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1159 (*Villatoro*).)

Evidence Code section 1108 is an exception to Evidence Code section 1101, subdivision (a)'s ban on admitting character evidence. (*Villatoro, supra,* 54 Cal.4th at p. 1159.) Evidence Code section 1108 authorizes the introduction of the defendant's prior sex crimes to prove his propensity for sexual misconduct if the evidence is not unduly prejudicial under Evidence Code section 352. "[T]he clear purpose of [Evidence Code] section 1108 is to permit the jury's consideration of evidence of a defendant's propensity to commit sexual offenses." (*Villatoro, supra,* 54 Cal.4th at p. 1164.)

Here, the trial court instructed the jury on both charged sexual offense evidence, counts 1 to 5, and uncharged sexual offense evidence, Y.C.'s testimony. The issue we must decide is whether Evidence Code section 1108 evidence is slight evidence satisfying the corpus delicti rule. We think not. Evidence that Gonzalez had a propensity to commit sexual offenses is not slight evidence demonstrating the fact of harm in this case, i.e., that Gonzalez sexually abused N.C. two months before August 25, 2016.

The Attorney General relies on *People v. Sanchez* (2016) 246 Cal.App.4th 167 (*Sanchez*), to support its argument Evidence Code section 1108 may be used to

establish the corpus delicti rule. In *Sanchez*, defendant was charged with six sexual offenses, four against D.C. arising from a single encounter, and two against M.C. during another encounter. (*Id*. at p. 169.) In an interview with police, defendant admitted to digitally penetrating D.C. in the hallway, but there was no direct evidence of this crime. (*Id*. at p. 172.) On appeal, defendant argued there was insufficient evidence of corpus delicti because there was no direct evidence of the digital penetration except his confession. (*Id*. at p. 173.) The *Sanchez* court concluded there was direct and circumstantial evidence defendant engaged in sexual activity against D.C. (*Id*. at p. 177.) The court explained D.C. testified defendant touched her vagina on the bed, another sibling saw defendant on top of D.C. on the bed, and M.C. testified defendant molested her. (*Ibid*.) In referencing M.C.'s testimony, the *Sanchez* court cited to Evidence Code section 1108. (*Ibid*.)

The Attorney General cites to *Sanchez* as authority for the proposition Evidence Code section 1108 evidence can establish corpus delicti. But in that case not only was there Evidence Code section 1108 evidence, there was also direct evidence in the form of D.C.'s and her sibling's testimony defendant molested her on the day in question. (*Sanchez, supra,* 246 Cal.App.4th at p. 177.) Unlike *Sanchez*, here, the molestation in question did not occur at the same time, but months before. Other than Gonzalez's confession, the record before us includes no slight, independent evidence demonstrating the fact of harm two months earlier. We reverse Gonzalez's conviction on count 3.

## II. *Unanimity—Counts 3, 4, & 5*

Gonzalez contends the trial court erred by charging the jury with a modified unanimity instruction.[3] We disagree.

_____

[3] The trial court's discussion of the jury instructions with counsel was not reported.

9

The jury's verdict must be unanimous and when the evidence suggests there was more than one discreet crime, the prosecution must elect among the crimes or the trial court must instruct the jury that it must agree on the same criminal act. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) We review the challenged instruction de novo "'"in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' [Citation.]" (*People v. Rivera* (2019) 7 Cal.5th 306, 326.)

The trial court instructed the jury with CALCRIM No. 3500, "Unanimity," as follows: "The defendant is charged with sexual penetration with a child 10 years of age or younger by a person aged 18 or older in [c]ounts 1 and 3 and lewd act upon a child under 14 in [c]ounts 2, 4, and 5. [¶] The People may have presented evidence of more than one act to prove that the defendant committed an offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed." (Bold omitted.)

Gonzalez claims the modified version of CALCRIM No. 3500 allowed the jury to convict him of *five* counts based only on *one* act.[4] Nonsense. Gonzalez's parsing of the instruction is a hyper-grammatical, nonsensical interpretation of the instruction. The instruction adequately explained the unanimity requirement to the jury. Additionally, the trial court instructed the jury with CALCRIM No. 3515, "Multiple Counts: Separate Offenses," as follows: "Each of the counts charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one." If there were any ambiguity in CALCRIM No. 3500, CALCRIM No. 3515 made clear to the jury that each count needed to be addressed on its own. We presume jurors are capable of understanding and correlating all instructions that are given.

---

[4] Gonzalez refers to all five counts when making his claim but only seeks reversal on counts 3, 4, and 5. We have reversed his conviction on count 3.

10

(*People v. Sattiewhite* (2014) 59 Cal.4th 446, 475.)  There was no error.  Because we address the merits of this claim, we need not address Gonzalez's related ineffective assistance of counsel contention.

DISPOSITION

We reverse Gonzalez's conviction on count 3 and remand.  In all other respects, the judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

IKOLA, J.

GOETHALS, J.

11